## McEvoy's Case.

*Henry S. Drinker, Jr.*, for petitioners; *Michael A. Foley*, for respondent.

GORDON, JR., J., Oct. 19, 1929.—This is a petition by the Committee of Censors of the Law Association of Philadelphia for the disbarment of the respondent, John S. McEvoy, Jr. Before presenting the petition, the Committee held a number of meetings, at which the respondent appeared and made answer to the charges against him. Certain findings of fact touching the professional conduct of the defendant were made by the Committee and presented to the court at the hearing of the rule. The respondent filed an answer, in which the charges of the Committee were denied, and the testimony was taken under the issues raised by the petition and answer. Before the conclusion of the hearings, however, the taking of testimony was brought to an end by the filing by the respondent of an amended answer, in which the charges of the Committee are sufficiently admitted to enable us to act without further testimony and without a detailed discussion of that already presented.

The charges consisted of allegations that, in various negligence cases, the respondent had forged the names of certain of his clients to releases, by means of which he settled the cases and acquired moneys as their attorney; that he had converted clients' moneys to his own use, as evidenced by the fact that from time to time he was short in his attorney's account.

The first paragraph of the amended answer reads as follows:

"1. That with respect to the disbursement of moneys collected by him for clients, he admits the allegations contained in the bill of complaint, in so far as they allege that at times subsequent to his collection of funds on behalf of clients he would not have sufficient funds in bank with which to pay his clients.

"That this happened with respect to a number of cases cited by the Board of Censors.

"That in each one of the cases a settlement was subsequently made with the client in full and that your petitioner did not intend to defraud or cheat any of his clients."

The second paragraph of the amended answer relates to the forged signatures to the releases, already referred to, and reads as follows:

"2. Defendant admits that a large number of releases came into his office which, it later developed, were executed with a forged signature and none of which was within the personal knowledge, nor were any of the releases so forged by respondent."

We do not deem it necessary to make specific findings respecting the issues thus attempted to be raised by the answer.

With respect to the last paragraph quoted, it is true that the respondent denies having himself forged the signatures in question or knowing that they were forged. Under the evidence presented, however, it cannot be believed that forged releases, by means of which the respondent collected moneys for his clients, passed through his office without his knowledge, when the moneys procured by the delivery of the releases to the opposing parties came into his possession. A single instance will suffice to illustrate our thought in the matter. The respondent represented a man named Hill in a claim for damages for personal injuries, and, after negotiations with the opposing party, the respondent sent for his client and informed him that the case could be settled for $500. The client authorized the settlement and executed a release in that amount to be delivered to the defendant. A dispute as to the amount of fees to be charged then arose between the respondent and his client, the respondent claiming 50 per cent. of the settlement, or $250. The client thereupon pointed out that his doctor's bill, which he had paid, was $35, and said that he thought the respondent should bear that expense out of his half of the settlement. After some dispute over this question, the respondent finally agreed to bear this expense and to pay the client $285 instead of $250. The evidence showed that the respondent did not use the $500 release, which his client had executed, but settled the case for $550 by delivering to the defendant a forged release for the latter amount. The respondent concealed from his client the fact that he had made settlement for the higher amount and settled with him upon the basis of the lower sum, thus overreaching his client to the extent of $50.

From the foregoing facts there can be but one conclusion—that, whether the actual forgery was committed by the respondent or not, he so profited by it that he must have known of and been a party to it, as well as the fraud practiced upon his client. As to some of the other forgeries, concerning which evidence was presented, it does not clearly appear that the respondent finally profited financially from them, although it would seem that, in some instances, he deferred settling with his clients, after he had secured moneys for them, until the Committee of Censors had started investigating his conduct. That there appears to have been no ultimate loss to his clients, however, is but an incident in the consideration of this feature of the case. It is the repeated use in his practice of forged instruments that is the important consideration; and this practice was of such shocking frequency as to give rise to no other conclusion than that he was a party to and beneficiary of it.

The embezzlement feature of the charges against the respondent was supported by incontrovertible evidence and required the admission of guilt which he made in his amended answer. It scarcely needs to be stated that, in the handling of a client's money, an attorney must keep it intact until delivered over, and one who temporarily uses it and is not at all times in a position to make immediate delivery of it commits an embezzlement. The mingling of the moneys of different clients in one attorney's account is not, of course, objectionable. But there can be no excuse, except, perhaps, in the case of a

*bona fide* mistake, for an attorney to be short for an instant in his trust account. The mere fact that he is solvent and ultimately is able to pay his clients in full does not excuse even a temporary use of such trust moneys. The repeated depletion of this attorney's accounts below the demands to which he was answerable would compel the action that we must take in this case. It may be noted, in addition, that during the time which elapsed in the taking of testimony, and in the face of the warning involved in the charges being investigated by the court, the respondent was again shown to have become short in his attorney's account. This defiant indifference to his obvious duty indicates in him a want of that sense of honor and high integrity without which the court cannot continue to hold him out to the public as worthy of trust and confidence.

As already indicated, our action follows inevitably upon the testimony and the respondent's admissions in his amended answer. Accordingly, the petition of the Committee of Censors of the Law Association is granted, and we enter the following

### Order.

And now, to wit, Oct. 19, 1929, John S. McEvoy, Jr., the above-named respondent, is hereby disbarred from his office of attorney in this court, and the prothonotary is directed to strike his name from the roll of attorneys and to give notice of this action to the Orphans' Court of Philadelphia County and to the Supreme and Superior Courts of Pennsylvania.